IN THE OREGON TAX COURT
MAGISTRATE DIVISION

John N. HART
and Daisy P. Hart,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*
(TC-MD 991021C)

John N. Hart, Plaintiff, filed the briefs *pro se*.

Dennis Ault, Department of Revenue, filed the briefs for Defendant.

Decision for Defendant rendered February 28, 2000.

**DAN ROBINSON, Magistrate.**

Plaintiffs have appealed a Notice of Tax Assessment issued by Defendant for tax year 1996 based on an adjustment to their return disallowing a subtraction for Individual Retirement Account (IRA) distributions taxed by China at the time of contribution.

A case management conference was held by telephone September 28, 1999. John Hart appeared for Plaintiffs. Defendant appeared through Dennis Ault. Following the submission of additional materials, the record closed January 7, 2000.

There is no dispute as to any material facts and the parties submitted the case to the court for determination of the legal issue presented.

STATEMENT OF FACTS

The income in question was earned solely by Hart, who was born and raised in Oregon. After serving in the Army during World War II, Hart began working for a company headquartered in San Francisco. He worked for various corporations in East and Southeast Asia for more than 30 years. From September 1985 until March 1, 1994, Hart worked as the China representative for an international corporation headquartered in New York. Both Hart and his wife lived in China during that period. They returned to the United States July 8, 1994, and established residence in Oregon.

Plaintiffs assert that they paid both United States federal and Chinese local income taxes on the wages earned while working in China, including the money they contributed to their IRA. The "local" taxes were imposed by the Municipality of Beijing. Plaintiffs began withdrawing funds from their IRA in 1995, after returning to Oregon, to pay the costs of their daughter's university education.

Hart contacted the Oregon Department of Revenue before filing his 1995 state income tax return to inquire about the taxation of the IRA distributions and was referred to Instruction 18 of the Form 40 instruction booklet, entitled "Other Subtractions."

*"Payments from IRAs, Keoghs, 403(b), and 457 plans.*
"You may be able to subtract some of your payments if all of the following apply:

"- You contributed to an IRA, Keogh 403(b) or 457 plan when you were a non-resident.
"- You paid tax on these contributions in your state of residence, and
"- You did not receive a tax benefit for these contributions from any other state.

"If you qualify, you may subtract an amount equal to the amount of contributions that were taxed in another state. Once your subtractions equal the contributions that were previously taxed, all other payments are taxable."

The individual at the department with whom Hart initially spoke voiced the opinion that the withdrawals made in 1995 were exempt from taxation because the contributions were taxed by the Beijing Municipal Tax Bureau of the People's Republic of China. Plaintiffs therefore began deducting the withdrawals from taxable income. Plaintiffs were later contacted by Defendant regarding their 1995 return and, after providing a copy of their federal return and a written explanation, heard nothing further.

Plaintiffs treated their 1996 withdrawals as they did their 1995 distributions. Thereafter in late April 1999, Plaintiffs received a Notice of Tax Assessment for 1996, dated April 26, 1999, in the amount of $1,813.00. Hart contacted Richard H. Padgett, Tax Auditor, about the assessment and, after explaining the situation, Padgett responded that the subtraction "sounded reasonable." Padgett later phoned Hart and explained that he discussed the matter further with a supervisor and was advised that he had been mistaken and that the distributions were taxable. He stated that the assessment was therefore valid. The Harts disagree and have filed this appeal.

## ANALYSIS

The issue before the court is whether the money withdrawn by Plaintiffs in 1996 from an IRA they established while living in China, and on which they paid taxes to the Municipality of Beijing at the time of contribution, are exempt from taxation by Oregon. There is no dispute as to whether the withdrawals were from a qualifying plan.

■     The applicable statute is ORS 316.159,[1] which provides, in relevant part:

> "(1)(a) In addition to other modifications to federal taxable income contained in this chapter, there shall be subtracted from federal taxable income of a resident individual the distributions received by the individual from a plan or trust described under subsection (2) of this section to the extent that:

> "(A) The distributions consist of contributions made in a tax period during which the individual was a nonresident; and

> "(B) The distributions consist of contributions made in a tax period for which no deduction, exclusion or exemption for the contributions was allowed or allowable to the individual for purposes of a **state** personal net income tax imposed during the period by the **state** of which the individual was a resident; and

> "(C) No deduction, exclusion, subtraction or other tax benefit has been allowed for the distributions by another **state** before the individual becomes a resident of this state." (Emphasis added.)

Considering generally the treatment of retirement account deposits and withdrawals, most contributions are exempt from federal taxation. IRC § 219. The subsequent distributions are then taxed.[2] States either tax the contribution or the later distribution, but not both. Thus, ultimately, if a

---

[1] Reference to the Oregon Revised Statutes (ORS) is to the 1995 laws, which govern the 1996 calendar tax year.

[2] Recently, retirement plans have been offered that tax the money at the front end (contribution), on the theory that a taxpayer is in a better position to pay the tax while the taxpayer is working, so that the distributions after retirement, when income will be less, are tax free. In other words, there is no deduction when the money is deposited into the account. *See* IRC § 408A(c) pertaining to Roth IRAs.

taxpayer lives in a state that imposes an income tax, the money diverted to the retirement account is taxed once by the federal government and once by the state. If a taxpayer lives in a state that taxes the money when it is contributed (*i.e.*, there's no state income tax benefit), and later moves to a state such as Oregon that taxes the distributions, the distributions are excluded from taxable income under ORS 316.159, because a state tax has already been paid. Here, Plaintiff paid a tax to a foreign jurisdiction, and the question is whether the tax so paid amounted to a "state" income tax.

The statute itself does not define "state." Nor is that word defined in ORS 316.022, which contains general definitions for chapter 316. Defendant has promulgated an administrative rule, but it does not define the word state either.[3]

Defendant's position is that the subtraction for qualifying plan contributions applies only to taxes paid to another state within the United States (and perhaps other United States territories and commonwealths such as Guam, Puerto Rico, American Samoa, and the Virgin Islands). Ault cites no definitive authority for his interpretation of the statute, and acknowledges that the definition varies in Oregon law and common reference sources such as the dictionary.

Hart contends that the obvious intent of the legislature "was to protect taxpayers against double taxation at the **local** level and that none of [the legislators] had any thought

---

[3] The rule provides, in part:

"(1)(a) For tax years beginning on or after January 1, 1991, Oregon will allow resident taxpayers a subtraction for distributions from an individual retirement account, Keogh plan or Simplified Employee Pension plan for the contributions to the plan that have already been taxed by another state. The subtraction is allowed only if all of the following conditions are met:

"(A) The distributions consist of contributions made during a period in which the individual was a nonresident of Oregon;

"(B) The distributions consist of contributions for which no deduction, exclusion or exemption for the contributions was allowed or allowable in the **state** in which the individual was a resident prior to becoming an Oregon resident; and

"(C) No deduction, exclusion, subtraction or other tax benefit has been allowed for the distributions by another **state** before the individual becomes a resident of Oregon."

OAR 150-316.159 (Jan 1996) (emphasis added).

in mind about excluding those who paid tax to a local jurisdiction that was not one of the 50 states of the Union." (Emphasis added.) Because Plaintiffs paid taxes to the Beijing Municipal Tax Bureau of the People's Republic of China when the contributions were made, they believe Oregon is discriminating against them in seeking to tax the withdrawals.

■ As in all cases dealing with the interpretation of a statute, the court begins with the language of the statute itself. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143, 1146 (1993). The court's task is to discern the intent of the legislature. *Id.* (citations omitted); ORS 174.020.[4] The court is "not to insert what has been omitted, or to omit what has been inserted." ORS 174.010. Finally, "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE,* 317 Or at 611.

■■ The intent of the legislature is not clear. The law excludes from taxable income retirement account withdrawals that were previously taxed by another "state."[5] It is likely some forms of double taxation were sought to be avoided, although the court is not so deciding. However, assuming that is a correct statement of legislative intent, it is not clear whether such an intent covers foreign jurisdictions. Other statutes have a more precise definition of state,[6] but they are

---

[4] ORS 174.010 provides:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

[5] *See* footnote 3 for the text of OAR 150-316.159, which states in plain English that the subtraction is for "contributions to the plan that have already been taxed by another state."

[6] For example, in ORS chapter 317, a statute that deals with corporate excise tax on foreign income, state is defined by reference to the Internal Revenue Code, which in turn distinguishes between income from within and outside the "United States." ORS 317.625. That narrow definition is consistent with Defendant's position in this case. Elsewhere, in ORS 314.610(8) "state" is broadly defined for purposes of taxing business and nonbusiness income to include any foreign country. That expansive view of "state" suits Plaintiffs' purpose in this case. In each instance, whether the word had a broad or narrow meaning, the legislature made its intent known.

found in other chapters of the Oregon Revised Statutes and have no relevance in this case because they are not *in pari materia*.[7]

Consideration of the common usage of the word state is not helpful because the word means different things to different people in different contexts. It is likely the more common understanding would be limited to states within the United States, but Plaintiffs received conflicting information from Defendant when they called to inquire about this particular situation, which suggests some uncertainty. Published definitions offer no guidance because the word is so broadly defined that no common definition can be held to apply. For example, Black's Law Dictionary defines state as "the political system of a body of people who are politically organized; the system of rules by which jurisdiction and authority are exercised over such a body of people." *Black's Law Dictionary* 1415 (7th ed 1999). Elsewhere, state is defined as "5 a: a body of people permanently occupying a definite territory and politically organized under a sovereign government almost entirely free from external control and possessing coercive power to maintain order within the community * * *." *Webster's Third New Int'l Dictionary* 2228 (unabridged ed 1993).

The court concludes reference in the statute to "state" must be viewed as limited to states within the United States and its territories. First, on the most fundamental level, the Municipality of Beijing is not a state, it is a municipality. As Defendant points out, Oregon does not allow a credit for other municipalities within a state in the United States, such as St. Louis or Kansas City. To hold that state means such varied jurisdictions as foreign municipalities would require the court to "insert what has been omitted" in violation of ORS 174.010.

Second, other countries are not set up according to the same governmental and administrative system (federal/state) as the United States and it would be difficult for taxpayers and the Department of Revenue to determine

---

[7] Not the same subject or relating to the same matter. *See Black's Law Dictionary* 794 (7th ed 1999).

whether the various taxes paid in another country equated to a "state" tax. China, for example, is divided into 23 provinces (including Taiwan), 5 autonomous regions, and 3 special municipalities that are directly under the jurisdiction of the central government. Business Operations in the People's Republic of China, 957-2d Tax Mgmt (BNA) A-1 (2001) (hereinafter China).[8] Beijing, which is the capital of the People's Republic of China, is one of the four special municipalities. *Id.* Is the Municipality of Beijing the same as a state in this country, or is China's capital equivalent to Washington D.C.? Brazil, politically, is a Union at the national level, and is further divided into states and a federal district. Business Operations in Brazil, 954-2nd Tax Mgmt (BNA) A-1 (2001) (hereinafter Brazil). The states, in turn, are divided into municipalities. *Id.* Finally, France is divided into regions, departments, and municipalities. Business Operations in France, 961-2d Tax Mgmt (BNA) A-1 (1999) (hereinafter France). Which of those would be equivalent to a state?

A third reason for the court's restrictive view of the word state found in ORS 316.159 is that the different political or administrative levels of government in other countries may or may not all impose an income tax and it can be difficult to determine the particular tax treatment abroad. In Brazil, only the national government (Union) imposes an income tax. Brazil, 954-2nd Tax Mgmt (BNA) at A-26. This appears to be the case in China and France as well, which raises a question of whether the taxes paid by Plaintiffs, which they characterize as local, were in fact local or national. *See* China 957-2d Tax Mgmt (BNA) at A-19 and France 961-2nd Tax Mgmt (BNA) at A-33. If the tax was national, then the tax would not be equivalent to a state tax, were the statute broadly construed to recognize foreign jurisdictions.

## CONCLUSION

ORS 316.159 exempts from state taxation IRA distributions that consist of contributions that were subject to

---

[8] Administratively, China has two parallel tax agencies, the State Administration of Taxation (SAT), which is under the central government, and the local tax bureaus (LTBs). The SAT collects and administers taxes for both the central government and the local governments. The LTBs collect taxes to fund local governments. BNA Portfolios, 957 TM, China, at A-19.

another state income tax. The taxes paid by Plaintiffs to the Beijing Municipal Tax Bureau of the People's Republic of China on the income diverted to their IRA were not paid to another "state." ORS 316.159(1)(a). ORS 316.159 does not apply to IRA distributions received by an Oregon resident that were taxed by a foreign jurisdiction at the time of the plan contributions. The references in ORS 316.159(1)(a) to "state" do not encompass the Municipality of Beijing. Although there was "no deduction, exclusion or exemption for the contributions" allowed by the Municipality of Beijing, as provided in ORS 316.159(1)(a)(B), the taxes imposed were not levied for "purposes of a **state** personal net income tax imposed during the period by the **state** of which the individual was a resident." *Id.* Nor were the distributions subject to a tax benefit by another "state." ORS 316.159(1)(a)(C).

If the state had intended to exclude from federal taxable income distributions received by residents who paid taxes on the earlier contributions to foreign jurisdictions, it could have done so in no uncertain terms. It did not. For the reasons stated above, the court concludes that the distributions here at issue, received in 1996, are taxable by the state of Oregon.

IT IS THE DECISION OF THE COURT that Defendant's Notice of Assessment, issued May 21, 1999, is upheld. The IRA distributions received by Plaintiffs in 1996 are subject to Oregon state income tax because the provisions of ORS 316.159, which provide for a subtraction from federal taxable income for state tax purposes, do not apply. Plaintiffs' requested relief is denied.